UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


EZZAT SLAIEH                                             PLAINTIFF

VS.                                 CIVIL ACTION NO. 3:08CV17TSL-JCS

DR. RASHID A. ZEINEH                                    DEFENDANT


MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of plaintiff Ezzat Slaieh to remand pursuant to 28 U.S.C. § 1446(c).  Defendant Dr. Rashid A. Zeineh has responded to the motion and the court, having considered the parties' arguments and evidence, concludes that the motion to remand is well taken and should be granted.

On May 21, 2007, plaintiff Ezzat Slaieh, a resident of Mississippi, filed suit against defendant Zeineh, a California citizen, in the County Court of Hinds County, Mississippi, alleging claims for breach of contract and fraud and demanding compensatory damages of $100,000, plus an unspecified amount of punitive damages.  On June 12, a return of service was filed in the state court record, reflecting that Zeineh had been personally served with process on June 5.  (a process server had personally served Zeineh with the summons and complaint on June 5, 2007). When Zeineh thereafter failed to timely plead, answer or otherwise defend, Slaieh filed an application for entry of default on July 9, which was promptly entered, and on July 24,  he moved for a default judgment on liability and requested a hearing on damages.

The default judgment was entered by the court on July 26, and following a hearing on September 27, a final judgment was entered awarding Slaieh compensatory damages in the amount of $100,000, along with $150,000 in punitive damages, and finding he was entitled to prejudgment interest and attorney's fees of 1/3 of the amount of the damages awarded.

On November 19, on plaintiff's application, a writ of garnishment for $418,657.77 was issued to Bank of America, which was reported to have funds on deposit belonging to Zeineh. In response to the writ of garnishment, Bank of America froze $418,657.77 in Zeineh's account. When Zeineh subsequently contacted Bank of America regarding a transaction that did not go through, he was informed of the garnishment.

Zeineh removed the case on January 8, 2008 on the basis of diversity jurisdiction. In his notice of removal and accompanying affidavit, Zeineh claims he was never served with process and that he first learned of Slaiegh's complaint, of the default judgment and of the writ of garnishment in December, 2007. Immediately upon removal, he filed a motion to set aside the default judgment entered in state court, and also moved to enjoin Bank of America from paying over the garnished funds to plaintiff or his counsel.[1]

_____

[1]     On January 7, the same date on which the notice of removal was filed, the state court entered an order directing that Bank of America turn over the garnished funds to plaintiff's counsel no later than January 9, 2008.

2

Plaintiff promptly moved to remand, arguing that removal was

untimely under 28 U.S.C. § 1446(b), which provides:

> The notice of removal of a civil action or proceeding
> shall be filed within thirty days after the receipt by
> the defendant, through service or otherwise, of a copy
> of the initial pleading setting forth the claim for
> relief upon which such action or proceeding . . . .[2]

Plaintiff maintained that contrary to Zeineh's denial that he was

served with process, the evidence, specifically the affidavit of

the process server, shows that Zeineh was in fact served with

_____

[2]    Plaintiff also argued initially that because the state
court had entered a final judgment prior to removal and defendant
had sought no post-judgment remedy from the state court, there was
no "case or controversy" upon which to remove.  He has since
implicitly abandoned this argument, presumably because he
recognized it had no merit.  Indeed, "the weight of authority
establishes that a defendant has the ability to remove a case to
federal court where an entry of default or default judgment has
previously been entered in state court."  Hawes v. Cart Prod.,
Inc., 386 F. Supp. 2d 681, 686 (D.S.C. 2005) (citations omitted).
Some courts have so held explicitly.  See, e.g., De La Pena v.
Hill-Rom Co., Inc., No. Civ.A.SA-04CA0809-XR, 2004 WL 2538472, *3
(W.D. Tex. 2004) ("Once a case is properly removed, the federal
court maintains exclusive jurisdiction and may entertain a motion
for relief from . . . a state court default judgment under Rule
60(b).") (citing Charles Alan Wright & Arthur R. Miller, 14C
Federal Practice and Procedure § 3738, at 408 (1998)).  Others
have recognized this implicitly.  See Jenkins v. MTGLQ Investors,
218 Fed. Appx. 719, 724, 2007 WL 431498, *3 (10th Cir. 2007)
(observing that "[s]everal courts have implicitly approved of
removal even after a state court has entered a default judgment");
Murray v. Ford Motor Co., 770 F.2d 461, 463, 465 (5th Cir. 1985)
(per curiam) (affirming order entered after removal that set aside
default judgment).

process on June 5, 2007, so that he had until July 5 to effect a timely removal.  According to plaintiff, defendant's notice of removal filed on January 7, 2008, more than eight months after service of the complaint, is therefore clearly untimely under § 1446(b).

The timeliness of removal turns on when, if at all, service was effected on Ze

ineh.  Thus, the determinative question presented by plaintiff's motion to remand is whether Zeineh received, i.e., was served with, a copy of the complaint on June 5, 2007, as claimed by plaintiff, or whether, as defendant claims, he first learned of the lawsuit in December 2007.

In support of his position that service was made upon defendant in June 2007, plaintiff has presented affidavits and extensive deposition testimony from Robert Young, the process server hired to serve defendant with the summons and complaint. In this testimony, Young explains in detail the circumstances surrounding his efforts to serve Zeineh and his contact with Zeineh.

Young states that at the time he was hired to serve process on Zeineh, he was provided copies of the summons and complaint, Zeineh's business and home addresses, and a photocopy of Zeineh's passport application so that he would be able to recognize Zeineh. On May 29, 2007, around 7:30 a.m., Young drove to the address he

4

had been given for Zeineh's business.  He knocked on the door, which was locked, but no one answered.  He returned twice during the day, but on both occasions, found the door locked and got no answer when he knocked.  Young went back to Zeineh's office several times over the next several days; the door was always locked and no one ever answered when he knocked.  On several of these occasions, he noticed a blue Mercedes parked in front of the building, and on one occasion, he spoke with someone in the unit next to Zeineh's, who told him that Zeineh usually arrived between 7:30 a.m. and 8:30 a.m.  Finally, on the afternoon of June 5, Young drove to the home address he had been given for Zeineh. When he arrived and knocked on the door, no one answered. However, as he was driving away, he saw a car turn onto the street which appeared to be the same blue Mercedes he had seen parked in front of Zeineh's office building.  Young turned around and went back to the house, where the Mercedes had pulled into the driveway.  Young exited his vehicle, and approached Zeineh with the summons and complaint in hand, and called out to him, "Dr. Zeinah."  Zeineh, who had gotten out of the Mercedes and was headed toward a gate leading toward a side entry of the home, turned around.  Zeineh asked, "Who are you?"  Young showed Zeineh his registered process server identification card, and identified himself to Zaineh verbally, and informed Zeineh he was there to serve him with legal documents from a court in the State of

5

Mississippi.  Zeineh responded, "I do not want them."  Young attempted to hand Zeineh the documents, but he turned to walk through the gate.  Young said to Zeineh, "You are served," and reached out to hand him the papers.  However, Zeineh continued to walk away, so Young dropped the papers on the ground, or the papers fell to the ground.

Young testified that he is certain the person with whom he had this encounter was Zeineh, and explained that he recognized him from his passport photograph.  Young further stated that as he spoke with Zeineh, he was facing him, just two or three feet away, and held the summons and complaint open in his hand, in such a way that the documents were clearly visible to Zeineh.

While Zeineh has presented his own affidavit in which he denies that he was served with process, the court finds Young's testimony to be the more credible.  For his part, Zeineh has offered no reason why this court should question Young's testimony.  He does not deny that the addresses provided to Young were correct.  He does not claim that the photograph Young had of him was not an accurate likeness.  He has not suggested that Young went to the wrong house, or that Young was mistaken about seeing him driving a blue Mercedes to that house.  In fact, Young has provided photographs of that car, along with an affidavit explaining that he ran the license tag number on the car and found that the car was, in fact, registered to Zeineh.  In short, the

court has no reason to doubt Young's veracity, or to question the particulars of his testimony.

However, Zeineh argues that even if the facts are as claimed by Young, the manner in which Young attempted service was defective because the suit papers were not actually "delivered" to Zeineh within the contemplation of Mississippi Rule of Civil Procedure 4(d)(1)(A), which provides:

> The summons and complaint shall be served together. Service by a sheriff or process server shall be made as follows:
> (1) Upon an individual other than an unmarried infant or a mentally incompetent person, (A) by delivering a copy of the summons and the complaint to him personally or to an agent authorized by appointment or by law to receive service of process.

Zeineh submits that although the rule does not define the term "delivery," it surely does not mean simply leaving court documents on the ground outside someone's house, and that therefore, it follows that he was never properly served with process in this cause.

Contrary to defendant's urging, the question here is not what would suffice as "delivery" in general, but rather what constitutes "delivery" of a copy of the summons and complaint to the defendant personally in a situation where the defendant is aware that service is being attempted and seeks to avoid service by refusing to accept service.[3]  While the Mississippi courts have

---

[3]     The court would certainly agree that leaving the summons and complaint on the doorstep, or the driveway, without more,

not addressed whether "in hand" delivery is required in this
circumstance, courts and commentators have consistently concluded
under identical and/or comparable rules for service of process
that where a defendant refuses to accept service of process,
"delivery" may be accomplished without physically placing the
documents in the hands of the defendant.

    Addressing this issue, Wright and Miller have distilled the
following rule from the federal cases reviewed:[4]

> If the defendant attempts to evade service or refuses to
> accept delivery after being informed by the process
> server of the nature of the papers, it usually is
> sufficient for the process server to touch the party to
> be served with the papers and leave them in the
> defendant's presence or, if a touching is impossible,
> simply to leave them in the defendant's physical
> proximity.  It is not crucial in these circumstances
> that the defendant does not take the papers into his or
> her possession.  Since this procedure satisfies the
> objective of giving notice to the party to be served, it
> seems to be entirely sufficient to satisfy the delivery
> requirement of Rule 4(e)(2).

4A Wright & Miller, Federal Practice and Procedure, § 1095 (3d ed.
2002).  A similar rule is recognized in 62B Am. Jur. 2d, Process,
§ 190 (2005):

> While personal service of process does not require "in
> hand" delivery, it should not become a game of wiles and
> tricks and a defendant should not be able to defeat
> service simply by refusing to accept the papers or by

---

would not constitute proper and effective service.

    [4]   Like the Mississippi rule, Federal Rule of Civil
Procedure 4(e) provides for service on an individual "by: . . .
(A) delivering a copy of the summons and of the complaint to the
individual personally . . . ."

instructing others to reject service.  Even though a
defendant refuses physical acceptance of a summons,
service is complete if a defendant is in close proximity
to a process server under such circumstances that a
reasonable person would be convinced that personal
service of the summons is being attempted . . . . A
process server may leave the summons outside of the door
of a structure, informing the defendant that he is so
doing, where the defendant interposes the door between
himself and the process server.

As these treatises recognize, federal and state courts have

routinely held that personal service of process does not require

"in hand" delivery when a defendant refuses to accept service of

process.  In fact, there are numerous cases applying this

principle.

An example of such a case is Doe v. Qi, 349 F. Supp. 2d 1258,

(N.D. Cal. 2004).  There, the evidence showed that the process

server stood about an arms-length away from the defendant, held

out a copy of the summons and complaint to the defendant, and said

to him, "Mr. Liu Qi, these are legal documents from the U.S.

District Court of California.  It's serious."  When the defendant

turned away without accepting the papers, the server stated, "You

can accept them or you do not have to, but you have been formally

served by the U.S. District Court of Northern California."  The

process server then offered the documents to members of the

defendant's entourage, but they were not accepted.  Concluding

that service was effective, the court observed, "The key question

is whether a party receives sufficient notice of the complaint and

action against them." Id. (citations omitted).  Thus, the court

wrote,

> The fact that Defendant Liu did not take possession of
> the court papers is of no import.  Where a defendant
> attempts to avoid service e.g. by refusing to take the
> papers, it is sufficient if the server is in close
> proximity to the defendant, clearly communicates intent
> to serve court documents, and makes reasonable efforts
> to leave the papers with the defendant.  See Errion v.
> Connell, 236 F.2d 447, 457 (9th Cir. 1956) (service
> sufficient when sheriff pitched the papers through a
> hole in defendant's screen door after she spoke with him
> and ducked behind a door to avoid service). . . .

349 F. Supp. 2d at 1275.  See also Durant, Nichols, Houston,

Hodgson & Cortese-Costa P.C. v. Dupont, 169 Fed. Appx. 45, 46,

2006 WL 452010, *1 (2nd Cir. 2006) (stating that "where a defendant

refuses to accept service, the papers may be left in his general

vicinity," but making clear that "a process server who elects the

'general vicinity' option must 'bring the questioned process

within the purview of the person to be served,' since 'the

defendant must be made aware that he or she is in fact being

served with process'") (citations omitted); Gambone v. Lite-Rock

Drywall Corp., 2003 WL 21891584, *4 (E.D. Pa. 2003) (finding that

"the refusal of a defendant to open a door does not invalidate

plaintiff's service," and observing that "[p]ersonal service need

not be face to face or hand to hand"); Jane Doe I v. Karadzic,

1996 WL 194298 (S.D.N.Y. 1996) (finding that service was effective

where evidence showed that process server approached the defendant

Radovan Karadzic in a Manhattan hotel lobby, called his name and

10

identified his purpose, and attempted to hand him the complaint from a distance of two to six feet, but were intercepted by security guards at which point the papers fell to the ground; process server acted reasonably and diligently in attempting to deliver the process to defendant and "clearly apprised defendant that he was attempting to serve legal papers, by calling after him words to the effect of 'you've been served'"); Jacobson v. Garland, 227 Ga. App. 81, 487 S.E.2d 640 (1997) (finding service sufficient where defendant refused to open door to accept service so summons was left on the ground outside the door, and holding that "if the process server and the defendant are within speaking distance of each other, and such action is taken as to convince a reasonable person that personal service is being attempted, service cannot be avoided by physically refusing to accept the summons"); CRB v. State Dept. of Family Servs., 974 P.2d 931, 935 (Wyo. 1999) (concluding that defendant was properly served where, after defendant refused to open his apartment door to accept service, process server called him while still outside the apartment and informed him that he had papers to serve on him, and, when he continued to refuse to open the door, the process server informed the defendant that he would leave the summons and complaint in his mailbox); Wood v. Weenig, 736 P.2d 1053, 1055 (Utah App. 1987) (finding service effective where deputy left papers at home after individual in the home refused to open the

11

door and accept process, and stating, "We strongly believe that
personal service should not become a 'degrading game of wiles and
tricks' nor should a defendant be able to defeat service simply by
refusing to accept the papers or instructing others, suitable
under the rules of civil procedure, also to reject service.");
<u>Schenkman v. Schenkman</u>, 206 Misc. 660, 662, 136 N.Y.S.2d 405, 406
(N.Y. Sup. 1954) (stating that "[w]here a person deliberately
rejects service and turns away therefrom after being made aware of
the attempt to effect such service upon him, there can be no doubt
about its validity when the summons is left with him").

Notwithstanding the wealth of authority from other
jurisdictions on this issue, Zeineh insists that under the
Mississippi rule for personal service, the summons and complaint
must be left with someone, and that the Mississippi rule does not
contemplate "dropping the documents to the ground outside of the
intended recipient's home or office." Yet this is hardly an
accurate characterization of what occurred here. Rather, what
occurred here is that the defendant, being apprised that Young was
a process server who was attempting to serve him with court
documents from Mississippi, refused to accept the papers and
turned away. The court is convinced that confronted with this
situation, the Mississippi courts, as any other court, would find

12

that this defendant was effectively served with process despite his refusal to take the papers into his hands.[5]

In fact, defendant argues, ironically, that plaintiff need not have even undertaken to serve him personally, because there was an easier and cheaper alternative means of service available to him, notably, service of process by certified mail, as provided by Mississippi Rule of Civil Procedure 4(c)(5).  Zeineh argues that plaintiff "could easily have served Dr. Zeineh by following the procedure" provided by Rule 4(c)(5), as follows:

> Service by Certified Mail on Person Outside State.  In addition to service by any other method provided by this rule, a summons may be served on a person outside this state by sending a copy of the summons and of the complaint to the person to be served by certified mail, return receipt requested.  Where the defendant is a natural person, the envelope containing the summons and complaint shall be marked "restricted delivery."  Service by this method shall be deemed complete as of the date of delivery as evidenced by the return receipt or by the returned envelope marked "Refused."

---

[5]     If the court did have doubts about the resolution of this issue in view of the lack of direct authority from the Mississippi courts on the point, it would have to remand the case anyway in view of the well-established principle that doubts as to the propriety of removal must be construed in favor of remand.  See RIH Acquisitions MS II v. Clarke Power Services, Inc., 489 F. Supp. 2d 597, 600 (N.D. Miss. 2007) (where Mississippi law was uncertain on whether service was effective, leaving court with serious doubts as to whether case had been timely removed, court found it "must resolve these doubts in favor of a finding that federal jurisdiction is lacking"); see also Willy v. Coastal Corp., 855 F.2d 1160, 1164 (5th Cir. 1988) ("[W]e emphasize that the burden of establishing federal jurisdiction is placed upon the party seeking removal. . . .  Moreover, removal jurisdiction raises significant federalism concerns, and we must therefore strictly construe removal jurisdiction.").

Yet while defendant's reliance on this provision is offered as support for his argument that uncertainties as to the effectiveness of personal service could have been avoided had plaintiff tried this "cheaper, less difficult and most effective form of service," this rule highlights the principle that a defendant cannot avoid service by refusing to accept service. Under the rule for service for certified mail, even if the defendant refuses to accept delivery, service is nevertheless "deemed complete."  There is no reason that a defendant's manifest refusal to accept delivery via personal service of process should be any less effective.

Based on the foregoing, the court concludes that defendant was effectively served with process on June 5, 2007.  That being the case, his removal on January 7, 2008, was untimely under 28 U.S.C. § 1446(b), and it follows, therefore, that plaintiff's motion to remand should be granted.

Accordingly, it is ordered that plaintiff's motion to remand is granted.

SO ORDERED this 25th day of February, 2008.


                              /s/ Tom S. Lee
                              UNITED STATES DISTRICT JUDGE